1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3

4

5     - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA     )      20CR6074
6                                  )
      vs.
7                                      Rochester, New York
      THEODORE LORIA,              ) November 16, 2020
8                   Defendant.          11:00 a.m.
      - - - - - - - - - - - - - X
9     **SENTENCING**
      **All parties appeared by the Zoom for Government Platform**
10

11                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE ELIZABETH A. WOLFORD
12                 UNITED STATES DISTRICT JUDGE

13

14                    JAMES P. KENNEDY, JR., ESQ.
                      United States Attorney
15                    BY: MELISSA MARANGOLA, ESQ.
                      Assistant United States Attorney
16                    100 State Street
                      Rochester, New York 14614
17

18
                      MARK FOTI, ESQ.
19                    402 Amherst Street
                      Buffalo, New York 14207
20                    Appearing on behalf of the Defendant

21                    J. FISH, USPO

22

23

24    **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                      **Karenclark1013@AOL.com**
25                    **100 State Street**
                      **Rochester, New York 14614**

```
 1                    USA VS. T. LORIA
 2
 3          THE CLERK:  We're here in the matter of the
 4  United States versus Theodore Loria, 20CR6074.  And,
 5  Judge, we do have some nonparties participating as well
 6  by audio only.
 7              THE COURT:  And Karen is on?
 8              THE CLERK:  She is.
 9              THE COURT:  Good morning, everybody.
10          MS. MARANGOLA:  Good morning, your Honor.
11          THE COURT:  Anybody that is not speaking if
12  you two just mute yourself, so in other words, the
13  attorneys and Mr. Loria, obviously should not be muted,
14  but everybody else, if you could mute yourself, that
15  would be helpful.
16              We're here in the matter of the United
17  States versus Loria.  I'm going to first state on the
18  record who is appearing on behalf of each party.  Ms.
19  Marangola, you're appearing on behalf of the government?
20              MS. MARANGOLA:  Yes, your Honor.
21              THE COURT:  And Mr. Foti on behalf of the
22  defendant?
23              MR. FOTI:  Yes, your Honor.
24              THE COURT:  And Mr. Loria, can you hear me
25  okay?
```

11:02:29
11:03:46
11:03:47
11:03:53
11:03:57
11:03:58
11:04:00
11:04:01
11:04:03
11:04:05
11:04:06
11:04:10
11:04:15
11:04:18
11:04:19
11:04:21
11:04:26
11:04:29
11:04:31
11:04:32
11:04:35
11:04:36
11:04:37
11:04:40

1                    USA VS. T. LORIA

11:04:41  2              THE DEFENDANT:  Yes, ma'am.

11:04:42  3              THE COURT:  And for the record, you are

11:04:45  4  Theodore Loria?

11:04:46  5              THE DEFENDANT:  Yes, ma'am.

11:04:47  6              THE COURT:  And you're represented by Mr.

11:04:49  7  Foti?

11:04:50  8              THE DEFENDANT:  Yes, ma'am.

11:04:50  9              THE COURT:  All right.  Mr. Loria, before we

11:04:53 10  do anything else, the first question I want to ask is

11:04:57 11  whether or not you're medically able to go forward.  We

11:05:02 12  are supposed to have this sentencing a few weeks ago and

11:05:05 13  I know you had some medical issues and you were on some

11:05:09 14  medication that Mr. Foti indicated were impacting your

11:05:12 15  ability to understand what was happening.  Are you able

11:05:16 16  to go forward this morning?

11:05:17 17              THE DEFENDANT:  Yes, ma'am.  But I'm

11:05:19 18  currently still on nerve medication for my nerves on the

11:05:23 19  left side of my body, but I'm able to go.

11:05:29 20              THE COURT:  I missed the last part of what

11:05:30 21  you said.

11:05:31 22              THE DEFENDANT:  I'm okay to go forward.

11:05:33 23  They still have me on some nerve medication regarding my

11:05:40 24  nervous system.

11:05:41 25              THE COURT:  Is that medication impacting

```
                      USA VS. T. LORIA
11:05:42   2  your ability to understand things?
11:05:44   3              THE DEFENDANT:  No, ma'am.
11:05:45   4              THE COURT:  I think previously you were on
11:05:47   5  some medication for shingles; you were on prednisone.
11:05:51   6              THE DEFENDANT:  Yes.
11:05:52   7              THE COURT:  Are you still on that?
11:05:53   8              THE DEFENDANT:  No, ma'am.
11:05:54   9              THE COURT:  So you're able to go forward
11:05:56  10  this morning?
11:05:57  11              THE DEFENDANT:  Yes, ma'am.
11:05:57  12              THE COURT:  All right.  The second thing I
11:06:04  13  need to do, I need to make sure you consent to
11:06:07  14  proceeding by Zoom, the video we're doing.  As you can
11:06:11  15  see, you're appearing by video.  Everybody is appearing
11:06:14  16  by video.  I'm appearing remotely.  I should have noted
11:06:17  17  as well, we have Officer Fish here from Probation.  Your
11:06:21  18  attorney, Ms. Marangola, everybody is appearing by
11:06:24  19  video.  And I want to explain to you the arrangements
11:06:28  20  that we've made.  Because of the COVID-19 pandemic,
11:06:33  21  Congress passed an emergency statute that permits
11:06:36  22  defendants in criminal cases to appear by video for
11:06:39  23  certain types of proceedings under certain
11:06:43  24  circumstances.  Now, our normal procedure before this
11:06:46  25  emergency would be to have everybody physically in a
```

USA VS. T. LORIA

courtroom for any type of proceeding.  Because of the
health risks associated with people being in a courtroom
together and transporting somebody who is in a jail
facility, transporting them to the courtroom, we're
giving defendants an option if they want to proceed
remotely.  Now, it's entirely up to you if you want to
proceed remotely.  If you wanted to, we could move
forward and conduct this appearance physically in court.
We are conducting court proceedings, Mr. Foti and I, we
just wrapped up a two week or so trial that we had over
the past couple of weeks where we were all physically in
court with jurors and so forth.  So if you wanted to
proceed in person, we certainly could make arrangements
to do that.  I want to also point out that because of us
proceeding remotely, this impacts, to some degree, the
ability of the public to attend this proceeding.  Now,
we're permitting the public to have audio access to this
proceeding.  And my courtroom deputy has confirmed there
are some members of the public that are participating.

        I should note for the record that this
proceeding may not be recorded or republished in any
way.  If anyone was to do so, it would be unlawful and
may constitute a contempt of court.  So let me first ask
Ms. Marangola, do you agree with my recitation of the

```
          1                    USA VS. T. LORIA
11:08:28  2   circumstances under which we're proceeding this morning?
11:08:31  3                    MS. MARANGOLA:  I do, your Honor.
11:08:32  4                    THE COURT:  Mr. Foti, do you agree?
11:08:35  5                    MR. FOTI:  I do as well.
11:08:37  6                    THE COURT:  Mr. Loria, do you understand
11:08:41  7   that you have the right to be physically present in open
11:08:45  8   court for your sentencing today?
11:08:47  9                    THE DEFENDANT:  Yes, ma'am.
11:08:48 10                    THE COURT:  You understand that you have the
11:08:49 11   right to consult with Mr. Foti during the proceeding
11:08:53 12   today.  And if you need to do that, let me know and we
11:08:56 13   can make arrangements for the two of you to go into
11:09:00 14   what's called a breakout room and have a confidential
11:09:04 15   communication.  Do you understand that.
11:09:05 16                    THE DEFENDANT:  Yes, ma'am.
11:09:05 17                    THE COURT:  Do you understand, Mr. Loria,
11:09:06 18   that your family members and other supporters have the
11:09:10 19   right to attend this proceeding if they wanted to?
11:09:13 20                    THE DEFENDANT:  Yes, ma'am.
11:09:14 21                    THE COURT:  Have you consulted with Mr. Foti
11:09:17 22   about waiving your right to appear in person and
11:09:19 23   agreeing to proceed by video?
11:09:21 24                    THE DEFENDANT:  Yes, ma'am.  I chose video.
11:09:24 25                    THE COURT:  Okay.  And you have agreed, just
```

```
                        USA VS. T. LORIA
11:09:27   2  so the record is clear, you're agreeing to waive your
11:09:30   3  right to appear in person and instead agree to be
11:09:33   4  proceed by video?
11:09:34   5              THE DEFENDANT:  Yes, ma'am.
11:09:35   6              THE COURT:  And do you also agree that to
11:09:38   7  the extent that your right to public access to this
11:09:41   8  proceeding is in anyway impaired, you waive that right?
11:09:47   9              THE DEFENDANT:  Yes, ma'am.
11:09:48  10              THE COURT:  All right.  Ms. Marangola, any
11:09:52  11  reason that you believe I should not accept this waiver?
11:09:55  12              MS. MARANGOLA:  No.
11:09:56  13              THE COURT:  Mr. Foti, any reason that you
11:09:58  14  believe I should not accept this waiver?
11:10:00  15              MR. FOTI:  No, your Honor.
11:10:00  16              THE COURT:  All right.  I do specifically
11:10:02  17  find that the sentencing today cannot be further delayed
11:10:06  18  without serious harm to the interest of justice.
11:10:09  19  Because a delay could impact the defendant's and the
11:10:12  20  public's right to a timely resolution of this matter and
11:10:17  21  impede the effective administration of justice.  I find
11:10:20  22  that Mr. Loria has knowingly and voluntarily waived his
11:10:24  23  right to appear physically and he has knowingly and
11:10:28  24  voluntarily agreed to proceed by video using the Zoom
11:10:33  25  for Government platform.  I further find that the
```

```
                        USA VS. T. LORIA
```

11:10:35  2  measures taken to provide the public access to this

11:10:42  3  proceeding are reasonable under the circumstances.  And

11:10:44  4  that to the extent that the defendant's right to public

11:10:47  5  access to this proceeding is in any way impaired, he has

11:10:51  6  knowingly and voluntarily waived that right.  So I will

11:10:54  7  accept Mr. Loria's waiver and we can now proceed with

11:10:57  8  the sentencing.

11:11:00  9          So, let me state, first of all, on the

11:11:03  10  record what I've received and reviewed in connection

11:11:05  11  with the sentencing.  I have the Presentence

11:11:11  12  Investigation Report dated August 5th, 2020; Mr. Loria's

11:11:16  13  objections to the Presentence Investigation Report that

11:11:19  14  were filed at docket 35; the defendant's statement of

11:11:24  15  sentencing factors filed at docket 42; and then the

11:11:27  16  statement of the government with respect to sentencing

11:11:29  17  factors that was filed at docket 32.

11:11:33  18          So let me first state on the record, Ms.

11:11:36  19  Marangola, can you confirm for me, first of all, that

11:11:39  20  I've stated everything that was submitted in connection

11:11:41  21  with sentencing?

11:11:43  22          MS. MARANGOLA:  That's accurate, yes, Judge.

11:11:44  23          THE COURT:  And can you confirm for me that

11:11:46  24  the government received the Presentence Investigation

11:11:49  25  Report?

1          USA VS. T. LORIA

11:11:49   2          MS. MARANGOLA:  I have, your Honor.

11:11:51   3          THE COURT:  And does the government have any

11:11:52   4     objections to the report other than the fact that the

11:11:56   5     calculations are different than what was in the plea

11:11:59   6     agreement?

11:11:59   7          MS. MARANGOLA:  No objections, Judge.

11:12:01   8          THE COURT:  Okay.  Mr. Foti, can you confirm

11:12:03   9     for me that I stated everything that was submitted in

11:12:06   10    connection with sentencing?

11:12:08   11         MR. FOTI:  That is correct.

11:12:09   12         THE COURT:  And can you confirm for me that

11:12:12   13    you received the Presentence Investigation Report and

11:12:14   14    reviewed it with your client?

11:12:15   15         MR. FOTI:  I did.

11:12:16   16         THE COURT:  Mr. Loria, can you confirm for

11:12:19   17    me that you reviewed the Presentence Investigation

11:12:21   18    Report with your attorney?

11:12:22   19         THE DEFENDANT:  Yes, ma'am.

11:12:23   20         THE COURT:  All right.  Now, Mr. Foti, you

11:12:25   21    had submitted some objections to the Presentence

11:12:28   22    Investigation Report.  Why don't we talk about those

11:12:30   23    right now before we go forward.  The first objection is

11:12:36   24    to the inclusion of the restitution letter from Sharon

11:12:42   25    Stiller, the attorney representing the victim, correct,

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | USA VS. T. LORIA                                             |
| 11:12:45 | 2  | Mr. Foti?                                                  |
| 11:12:46 | 3  | MR. FOTI:  Yes.                                            |
| 11:12:47 | 4  | THE COURT:  Anything else you want to put on               |
| 11:12:48 | 5  | the record about that?                                     |
| 11:12:49 | 6  | MR. FOTI:  No, I'll rest on the papers.                    |
| 11:12:54 | 7  | Obviously, I recognize that the revised final PSR notes    |
| 11:13:00 | 8  | the stipulated amount as I think I documented in the       |
| 11:13:05 | 9  | objections.  It's really to the inclusion of the letter    |
| 11:13:09 | 10 | at this point where Ms. Stiller identifies what her        |
| 11:13:13 | 11 | legal expenses were and other costs were that she          |
| 11:13:17 | 12 | associates as being restitution in this case.              |
| 11:13:20 | 13 | THE COURT:  All right.  Ms. Marangola, the                 |
| 11:13:22 | 14 | victim has agreed to the restitution figure that has       |
| 11:13:25 | 15 | been stipulated?                                           |
| 11:13:26 | 16 | MS. MARANGOLA:  Yes, Judge.                                |
| 11:13:29 | 17 | THE COURT:  I'm going to overrule this                     |
| 11:13:31 | 18 | objection to including the restitution letter.  First of   |
| 11:13:34 | 19 | all, I think under -- I don't think.  I'm finding under    |
| 11:13:41 | 20 | Rule 32(i)(3)(B) that a ruling is unnecessary because      |
| 11:13:50 | 21 | the restitution figures that Ms. Stiller includes in her   |
| 11:13:54 | 22 | letter are not going to impact the sentencing because of   |
| 11:13:57 | 23 | the parties' stipulation to the restitution figure which   |
| 11:14:00 | 24 | I think is reasonable under the circumstances.  I also     |
| 11:14:02 | 25 | note under 18 U.S.C. Section 3661, there should be no      |

```
                         USA VS. T. LORIA
```

11:14:07  2   limitation placed on the information that I consider in

11:14:10  3   connection with sentencing about the background and so

11:14:14  4   forth.  And I think Ms. Stiller's letter is relevant to

11:14:17  5   the extent that she notes this civil litigation that

11:14:21  6   apparently was commenced by Mr. Loria by against the

11:14:24  7   victim that was, sounds like, not only tossed out of

11:14:30  8   court, but there was an injunction issued against Mr.

11:14:33  9   Loria from commencing any further litigation, which is a

11:14:36  10  pretty drastic remedy.  And I think that is relevant for

11:14:42  11  me to consider in relation to sentencing.  So the

11:14:46  12  objection is overruled.

11:14:47  13          Mr. Foti, you also have an objection related

11:14:50  14  to background information, but I think that has been

11:14:52  15  resolved.  Is that correct?

11:14:54  16          MR. FOTI:  That is, yes, that is correct.

11:14:58  17          THE COURT:  Okay.  So then, the outstanding

11:15:02  18  objections relate to including the other arrests in the

11:15:06  19  Presentence Investigation Report.  And then the

11:15:09  20  paragraph in the Presentence Investigation Report

11:15:13  21  regarding the inadequacy -- indicating that I could

11:15:18  22  consider the inadequacy of Mr. Loria's criminal history

11:15:24  23  based on his extensive criminal history that doesn't

11:15:28  24  result in any points.  Do you want to add anything on

11:15:31  25  the record about that?

USA VS. T. LORIA

MR. FOTI:  No.  I'll rest on my papers in both regards.  Obviously, they are related, the inclusion of other arrests which are ultimately incorporated in the number that the PSR suggests is qualifying for the Court's consideration of an upward departure.  I think that they are considered sort of in conjunction with each other and in terms of why we object, I think we laid those out in the paper, but I can answer any questions if the Court has any.

THE COURT:  No, I don't.  I'm going to overrule the objection to the extent you're objecting to, including the other arrests in the PSR.  That is clearly something that is relevant and should be and typically is considered.  So under 18 U.S.C. Section 3661, it's appropriate to include information, not just about convictions, but also about arrests so that a court at least has a full picture of the defendant's background.  Now, in terms of the potential upward departure.  Obviously, I'm not going to accept the agreed upon 24-month prison sentence then Mr. Loria has the right to back out of the plea agreement.  So I think it's really unnecessary to resolve that issue because we're going to address that right now and that is whether or not I should accept the plea agreement.  And,

```
                             USA VS. T. LORIA
```

1

11:17:10    2    obviously, the parties' plea agreement stipulated that

11:17:22    3    the Court would impose a 24-month prison sentence.  If I

11:17:26    4    were to accept that, that would be below the calculated

11:17:30    5    Guideline range that is in the Presentence Investigation

11:17:34    6    Report that nobody is objecting to per se, those

11:17:38    7    calculations in the Presentence Investigation Report

11:17:44    8    because they are correct.  I have looked at this case,

11:17:47    9    and for reasons that I will explain further on the

11:17:51    10   record, I would only agree to accept a 24-month prison

11:17:59    11   sentence if I also imposed, as part of a sentence, a

11:18:07    12   supervised release term that includes the six months of

11:18:09    13   home detention as recommended in the Presentence

11:18:13    14   Investigation Report.  Now, there was no objection to

11:18:20    15   that in any of the filings.  And I don't read the plea

11:18:24    16   agreement as impacting the terms and conditions or the

11:18:27    17   length of a supervised release term, but I guess I want

11:18:31    18   to confirm that on the record with counsel before we go

11:18:35    19   forward.

11:18:37    20            MS. MARANGOLA:  That is correct, your Honor.

11:18:39    21   The only agreement is the 24-month imprisonment

11:18:47    22   sentence, meaning in custody.  We didn't agree on any

11:18:52    23   restrictions on advocating for a supervised release

11:18:55    24   term.

11:18:55    25            THE COURT:  Mr. Foti, do you agree with

```
  1                      USA VS. T. LORIA
  2  that?
  3                MR. FOTI:  That is correct, yes.
  4                THE COURT:  Okay.  All right.  So given that
  5  and given the fact that I do have discretion to impose
  6  certain conditions and a length of supervised release, I
  7  will accept the plea agreement and I will agree to
  8  impose a 24-month prison sentence, which would be a
  9  below Guideline sentence in this case.  And I'll explain
 10  my reasoning further as we move forward.
 11                With that being said, Mr. Foti is the
 12  defendant ready to move forward with sentencing?
 13                MR. FOTI:  Yes, we are.  Mr. Loria, you okay
 14  or do you need --
 15                THE DEFENDANT:  I need to speak to you for
 16  one minute.  Is that possible?
 17                THE COURT:  Yes, that is possible.  My
 18  courtroom deputy should be able to put the two of you
 19  into a breakout room.  So, keep our fingers crossed and
 20  hope that works.
 21                THE CLERK:  Judge, give me one movement.
 22                MR. FOTI:  Thank you, Judge.
 23                (Whereupon, Mr. Foti and the defendant went
 24  off the record to confer.)
 25                MR. FOTI:  Mr. Loria had a question because
```

11:18:57  11:18:58  11:19:00  11:19:04  11:19:09  11:19:13  11:19:16  11:19:20  11:19:25  11:19:27  11:19:29  11:19:33  11:19:36  11:19:37  11:19:40  11:19:41  11:19:43  11:19:47  11:19:52  11:19:53  11:22:51  11:22:51  11:22:51  11:22:52

USA VS. T. LORIA

11:22:54  2  the letter from Ms. Stiller is going to stay in the PSR,

11:22:58  3  he wasn't clear on whether that impacts the stipulated

11:23:02  4  restitution figure.  I addressed it with him and I think

11:23:06  5  he understands that it's included as background

11:23:08  6  information and we're ready to go forward with

11:23:10  7  sentencing at this time.

11:23:11  8          THE COURT:  Yeah.  And to confirm, my plan

11:23:14  9  is to impose restitution in the amount of that was

11:23:18 10  stipulated amount and not to of -- I'm not considering

11:23:25 11  the letter to the extent.

11:23:27 12          THE DEFENDANT:  I misunderstood, I'm sorry.

11:23:28 13          THE COURT:  That's fine.  So are you ready

11:23:31 14  to go forward, Mr. Loria?

11:23:33 15          THE DEFENDANT:  Yes, ma'am.

11:23:33 16          THE COURT:  Does the government move to

11:23:35 17  sentence the defendant?

11:23:36 18          MS. MARANGOLA:  The government so moves,

11:23:37 19  your Honor.

11:23:38 20          THE COURT:  Ms. Marangola, anything you

11:23:40 21  would like to say before I sentence Mr. Loria?

11:23:42 22          MS. MARANGOLA:  Just very briefly, your

11:23:44 23  Honor.  As has been pointed out by the Court, the

11:23:47 24  parties have agreed on a 24-month sentence and a

11:23:50 25  restitution amount of 8,249.70.  I'll obviously answer

                    USA VS. T. LORIA

11:23:57   2   any inquiry by the Court.  I'll note this is a very

11:24:01   3   unusual case.  Mr. Foti and I have discussed this case

11:24:05   4   at length to come up with an appropriate resolution.  I

11:24:09   5   note I spoke with the victim and met with her multiple

11:24:13   6   times to discuss the outcome.  She is really at a point

11:24:17   7   she wants to move on with her life.  She didn't want to

11:24:20   8   engage any further in litigation because she didn't want

11:24:23   9   to come face to face with the defendant or fight about

11:24:26  10   it.  And as the Court is aware, this charge only carries

11:24:30  11   a maximum sentence of five years imprisonment, which,

11:24:34  12   frankly, is not a lot to work with.  So we came up with

11:24:39  13   a resolution that we thought was fair to both parties.

11:24:45  14   With that said, I will be requesting a three-year period

11:24:49  15   of supervised release.  The victim in this case is

11:24:51  16   concerned, obviously, when he gets out of prison that

11:24:53  17   she may be contacted again.  I'm glad the Court brought

11:24:58  18   up its decision to impose the six-month home

11:25:01  19   incarceration.  I think that will provide some solace to

11:25:07  20   the victim in this case.  And I would just ask that

11:25:09  21   potentially, not home incarceration, but potentially

11:25:13  22   either a bracelet or something like that be extended if

11:25:16  23   probation thinks it's necessary and the Court thinks

11:25:20  24   it's necessarily beyond that.  Other than that, outside

11:25:24  25   of inquiry, I have nothing to add.

                              USA VS. T. LORIA

11:25:26    2          THE COURT:  Just a couple of points of

11:25:28    3    clarification.  The restitution figure is 50 cents or 70

11:25:34    4    cents?  I had 50 written down.

11:25:39    5          MS. MARANGOLA:  Fifty cents.

11:25:39    6          THE COURT:  8249.70?

11:25:43    7          MS. MARANGOLA:  Yes.

11:25:43    8          THE COURT:  Do you agree with that, Mr.

11:25:45    9    Foti?

11:25:46   10          MR. FOTI:  You might have gotten it from my

11:25:48   11    filings because I have the 50 cents written down, but

11:25:55   12    we're not going to object to the additional 20 cents.

11:26:00   13          THE COURT:  Okay.  So if we're all in

11:26:02   14    agreement it's 8249.70, right?

11:26:06   15          MR. FOTI:  That's fine, yes.

11:26:07   16          THE COURT:  And just the proposed special

11:26:10   17    condition in the PSR is home detention subject to

11:26:16   18    electronic monitoring, which isn't as severe as home

11:26:20   19    incarceration.  It would allow Mr. Loria to be out for

11:26:24   20    medical appointments and court appearances if necessary

11:26:27   21    and religious services.

11:26:30   22          MS. MARANGOLA:  That's fine, your Honor.

11:26:33   23    That's fine.

11:26:33   24          THE COURT:  The government is fine with

11:26:35   25    that?

|          |    |                                                      |
|----------|----|------------------------------------------------------|
|          | 1  | USA VS. T. LORIA                                      |
| 11:26:36 | 2  | MS. MARANGOLA:  Yes.  And he is going to be           |
| 11:26:37 | 3  | subject to GPS, so we would know he is not in the     |
| 11:26:41 | 4  | vicinity of the victim, that is all we care about.    |
| 11:26:44 | 5  | THE COURT:  Fair enough.  Thank you, Ms.              |
| 11:26:45 | 6  | Marangola.  Mr. Foti, anything you would like to say on |
| 11:26:48 | 7  | behalf of your client before I sentence him?          |
| 11:26:50 | 8  | MR. FOTI:  Judge, I think I tried to layout           |
| 11:26:52 | 9  | in the sentencing statement as carefully as I could the |
| 11:26:58 | 10 | considerations that I think are relevant under 18 U.S.C. |
| 11:27:02 | 11 | 3553.  I'll just reiterate, Mr. Loria has been emotional |
| 11:27:12 | 12 | throughout this process.  And part of that is based on |
| 11:27:15 | 13 | his mental health issues that he has been trying to deal |
| 11:27:19 | 14 | with.  Part of it is as I mentioned in the filings sort |
| 11:27:22 | 15 | of the emotional impact of being separated from Blue,  |
| 11:27:26 | 16 | his dog, and his general embarrassment and shame that he |
| 11:27:32 | 17 | feels as a result of this.  He said, when interviewed in |
| 11:27:36 | 18 | the PSR, that he is ashamed of his actions, and I       |
| 11:27:39 | 19 | believe that that is the terminology used.  And whether |
| 11:27:43 | 20 | it was or not, that is the terminology used as recently |
| 11:27:47 | 21 | as this morning when we talked about it.  I think there |
| 11:27:50 | 22 | are things that he is still working through in terms of |
| 11:27:57 | 23 | the relationship that he was in and the way he responded |
| 11:28:03 | 24 | to certain things, and it's something that he'll        |
| 11:28:06 | 25 | probably always have to work through.  But it's         |

USA VS. T. LORIA

something he has been working hard at since the arrest
and continue -- he has demonstrated and indicated a
continued commitment to doing so.  Twenty-four months is
not a short period of time.  On the other hand, he also
understands that the charge could have carried more time
and the important thing for him is focusing on
rehabilitation, engaging in treatment, engaging in
prescribed medication and doing what he needs to do when
released to supervised release and well after that to
move on and to stay out of trouble.  I can only say in
terms of my interactions with Mr. Loria, he has always
been respectful to me.  I've known him for some time
before this.  But he has remained respectful even in
this situation, no matter how much stress there was.  He
has, in my opinion, always demonstrated a respect
towards the process and towards the parties involved and
I think he is somebody who is capable of learning from
this and trying to move in the right direction going
forward.  So we appreciate the consideration given to
the plea discussions.  We appreciate the consideration
the Court has given.  We're ready to move forward.  I
know I did -- I did ask him this morning about whether
he would intend to expound upon what he has expressed
that he feels shame here.  And I think it's hard for him

```
                              USA VS. T. LORIA
```

to talk about this without him becoming emotional, at
least as of this morning he indicated that I reiterate
that is how he feels.  I don't think he intends to speak
beyond that about it.  That is consistently how he has
felt and it still is at this point and he is ready to
move forward.

            THE COURT:  Let me ask you a question.  You
make a reference in your submission of the defendant and
Charlie Tan, and Mr. Loria believing that the victim had
conspired, I guess, with Mr. Tan to potentially kill Mr.
Loria because of the life insurance policy.  And I'm
having trouble understanding, I guess, the rationale for
this because I went and looked at the Northern District
of New York to confirm my recollection of that criminal
proceeding against Mr. Tan.  And as of September 2017,
he was incarcerated in Federal Court or in the federal
case in the Northern District of New York.  And yet the
time frame for the harassment here, the cyber stalking,
was June of 2017 through August of 2019.  So what am I
missing?

            MR. FOTI:  So, I think it was to the extent
I talked about that I was trying to provide background
information into sort of where the inception of this
issue begins.  And the only reason, I think the only

USA VS. T. LORIA

11:31:23  2  reason I did that was because I think if the Court is

11:31:28  3  aware of that, the Court can see or make certain

11:31:31  4  determinations as to how some of this behavior was tied

11:31:36  5  to mental health issues as opposed to a visceral

11:31:41  6  reaction to a relationship falling apart.  I think that

11:31:48  7  it became clear, maybe not at the inception of the case,

11:31:50  8  but after the cellular extractions were provided, that

11:31:54  9  in terms of the time frame, the beginning of the

11:31:59  10  problematic aspects of this relationship that seems to

11:32:03  11  sort of overwhelm a lot of the behavior that follows the

11:32:07  12  end of the relationship really stems from this situation

11:32:14  13  that took place at Christmas where there was an

11:32:20  14  invitation extended to Mr. Tan to join them for

11:32:25  15  Christmas, which was something rejected by Mr. Loria,

11:32:28  16  and resulted in a pretty aggressive disagreement.  That,

11:32:36  17  kind of, plants the seeds for what follows.  It's not

11:32:41  18  meant to a justification in any way, and Mr. Loria has,

11:32:44  19  obviously, pled guilty and his intent is to fully take

11:32:49  20  responsibility here.  And since that is from his

11:32:53  21  perspective, and I think it's backed up by the evidence

11:32:56  22  that I reviewed, where this sort of starts it seems

11:32:59  23  relevant to at least reference that and mention that

11:33:02  24  being part of what leads to all of this.

11:33:05  25              THE COURT:  This was Christmas of 2016?

```
 1                        USA VS. T. LORIA
 2            MR. FOTI:  Yes, yes.
 3            THE COURT:  All right.  Thank you, Mr. Foti.
 4            Mr. Loria, the law allows to you address me
 5   before I sentence you.  Is there anything that you would
 6   like to say?
 7            THE DEFENDANT:  Yes, ma'am.  Regarding my
 8   supervised release for the three years, if you could
 9   order that I have the ankle monitor on me for the entire
10   three years because people like to lie on me, and so
11   that would, if somebody lied and said I was somewhere I
12   wasn't supposed to be, that would show exactly where I
13   was.  My sister will pay for that three-year cost of
14   having that bracelet on me.  I would ask you to order
15   that I be monitored for the three years of supervised
16   release with the GPS, which my sister will pay for.  So
17   if anybody makes a lie up and says I was somewhere where
18   I wasn't, that GPS will corroborate I wasn't there.
19            THE COURT:  Well, Mr. Foti, what is your
20   position on that?
21            MR. FOTI:  Judge, it wasn't something Mr.
22   Loria and I spoke about before today.  I guess I
23   understand where he is coming from.  If the Court is
24   going to order six months of home detention with the
25   ankle bracelet, my request would be impose that, and I
```

USA VS. T. LORIA

11:34:27  2   can speak to Mr. Loria and he can speak with his

11:34:30  3   probation officer, I guess, if there is an extent to

11:34:33  4   extend the electronic monitoring, although it would be

11:34:34  5   unusual for the defendant to make that request, I think

11:34:40  6   we can make that request at that time.  I would rather

11:34:43  7   proceed with the six months of home detention with

11:34:47  8   electronic monitoring.  I don't dispute anything Mr.

11:34:50  9   Loria is asking for.  I think it's a request that we can

11:34:55  10  make later after he has gotten out and he receives

11:34:58  11  treatment and we evaluate where things are.

11:35:01  12         THE COURT:  Mr. Loria, the way GPS

11:35:05  13  monitoring works, I'm going to put you on home detention

11:35:08  14  initially, which means you won't be able to leave the

11:35:11  15  house unless specifically authorized by probation and is

11:35:14  16  within the scope of the authorized terms.  I'm going to

11:35:17  17  -- to do that for three years doesn't make sense, and

11:35:20  18  then maybe put you on a curfew for three years, I think

11:35:26  19  I agree with Mr. Foti, it's probably best, let's see how

11:35:30  20  it goes once you're released.  And if you want to make a

11:35:33  21  request to extend it and everybody is in agreement on

11:35:35  22  that and you're willing to pay for it, then we can deal

11:35:39  23  with it when that happens.

11:35:42  24         THE DEFENDANT:  Thank you.  Other than, as

11:35:43  25  Mr. Foti said, I'm ashamed of my actions.  I handled the

                         USA VS. T. LORIA

11:35:47  2  situation wrong.  I should have handled it extremely

11:35:50  3  different.

11:35:51  4              THE COURT:  Okay.  Thank you, Mr. Loria.

11:35:53  5              THE DEFENDANT:  Thank you, ma'am.

11:35:54  6              THE COURT:  I am prepared to sentence you in

11:35:55  7  that regard.  As I indicated, I have had an opportunity

11:35:58  8  to review the Presentence Investigation Report as

11:36:01  9  revised August 5th, 2020, as well as all of the other

11:36:06  10 submissions to which I previously referred.  I carefully

11:36:09  11 reviewed all of the submissions.  I listened carefully

11:36:12  12 to all of the comments that have been made here today as

11:36:16  13 well as considered the victim's statements contained in

11:36:18  14 the Presentence Investigation Report.

11:36:21  15              So, you're 53 years old, Mr. Loria.  And

11:36:24  16 you're being sentenced after pleading guilty to cyber

11:36:28  17 stalking in violation of 18 U.S.C. Section 2261A(b)(2)

11:36:37  18 and (b)(5) or 2261(b)(5).  This is considered a class D

11:36:40  19 felony.  The maximum sentence that I can impose is five

11:36:44  20 years in prison, a $250,000 fine and up to three years

11:37:05  21 of supervised release.

11:37:05  22              Now, on June 3rd, 2020, you appeared by

11:37:07  23 Zoom, same way we are proceeding today, and you pled

11:37:07  24 guilty.  Your plea was pursuant to a Rule 11(c)(1)(C)

11:37:07  25 plea agreement and requested that I impose a 24-month

                        USA VS. T. LORIA

11:37:13  2  prison sentence.  The deal was if I did not go along

11:37:15  3  with that, that you and the government could withdraw

11:37:20  4  from that plea agreement.  As I indicated, I'm going to

11:37:23  5  accept that plea agreement.

11:37:24  6          Sentencing, Mr. Loria, is pursuant to the

11:37:26  7  Sentencing Reform Act of 1984.  In deciding on a

11:37:29  8  reasonable and appropriate sentence, I have a

11:37:32  9  responsibility to impose a sentence that is considered

11:37:35  10  sufficient, but not greater than necessary to comply

11:37:40  11  with the objectives of sentencing set forth in 18 U.S.C.

11:37:44  12  Section 3553(a).  Mr. Foti has raised certain objections

11:37:49  13  to the Presentence Investigation Report.  He indicated

11:37:59  14  that he went over that report and there were certain

11:38:02  15  objections that I resolved, as I indicated on the

11:38:04  16  record, and, therefore, I'm going to adopt the

11:38:06  17  statements contained the Presentence Investigation

11:38:08  18  Report as my findings of fact.

11:38:10  19          Now, the Sentencing Guidelines are no longer

11:38:12  20  mandatory, they are advisory.  But they are the first

11:38:15  21  step that I have to go through before I impose a

11:38:19  22  sentence.  And I do find the calculations and

11:38:20  23  recommendations set forth in the Presentence

11:38:24  24  Investigation Report are correct.  So what that means is

11:38:26  25  that pursuant to 2A6.2(a) of the Sentencing Guidelines,

                              USA VS. T. LORIA

11:38:30   2   there is a base offense level here of 18.  Because you

11:38:35   3   engaged in a pattern of stalking and harassing the

11:38:39   4   victim involving text messages, phone calls, physical

11:38:42   5   surveillance, there is a two-level increase to that base

11:38:46   6   offense level pursuant to 2A6.2(b)(1)(E).  I do find you

11:38:53   7   accepted responsibility for your conduct, so pursuant to

11:38:59   8   the 3E1.1(a) and 3E1.1(b), I'm going to reduce the

11:39:00   9   offense level by three.  So your total offense level is

11:39:03   10  a 17.  Your criminal history, based on the criminal

11:39:06   11  history documented in the Presentence Investigation

11:39:09   12  Report, is a category II.  So what that means is that

11:39:12   13  the Sentencing Guidelines, with an offense level of 17,

11:39:15   14  criminal history category of II, the Sentencing

11:39:19   15  Guidelines would recommend a prison sentence of 27 to 33

11:39:22   16  months, one to three years of supervised release, and a

11:39:25   17  fine of $10,000 up to $95,000.

11:39:29   18              Now, in addition to the Sentencing

11:39:31   19  Guidelines, I've also considered all of the other

11:39:33   20  factors set forth at 18 U.S.C. Section 3553(a) to

11:39:38   21  determine a sentence that is sufficient but not greater

11:39:40   22  than necessary to comply with the objectives of

11:39:43   23  sentencing set forth in that statute.  I've considered

11:39:46   24  the nature and circumstances of your crime, your history

11:39:48   25  and characteristics.  Your mental health issues are

                              USA VS. T. LORIA

documented in the Presentence Investigation Report as
well as your attorney's filings on your behalf.  And I
think they are clearly significant and there is no
question that some of your criminal history, and I think
conduct in this case, can be attributable to those
mental health issues.  Your criminal history dates back
to the age of 12.  You had your first felony conviction
after a trial back in October of 1988, but that was
reversed on appeal.  So it looks as though the first
felony conviction that actually stuck, so to speak, was
in 1993.  Your most recent criminal felony conviction
before this conviction was December of 2000 related to
drug trafficking crimes.  You were sentenced to 5 to 10
years of prison.  There were various violations of
parole before your parole expired in 2009.  Disciplinary
infractions while you were incarcerated.  Clearly you
look at your criminal history, it shows mental health
issues, but it also shows a disregard for the law.  And
that is concerning because I do believe that unless you
keep up with your mental health treatment and take the
medication that you need and stay on top of that, you're
going to revert back to this history that you've had and
run into further problems with the criminal justice
system.

1                  USA VS. T. LORIA

11:41:31   2            I've considered -- you obviously have a very

11:41:34   3   supportive sister.  And you're very fortunate to have

11:41:37   4   her involved in your life.  No question about that.

11:41:41   5   I've considered the circumstances of this offense.  I

11:41:48   6   mean, you read the victim impact statement, and it's

11:41:51   7   just devastating the impact that your conduct had on

11:41:55   8   this victim.  But not just the victim, her whole family.

11:41:59   9   I mean, it included threatening her 10-year-old daughter

11:42:03   10   and that is just horrible conduct that, unfortunately,

11:42:07   11   is the type of criminal activity that has a lasting

11:42:12   12   impact on a victim.  And I'm sure is going to take years

11:42:19   13   for her and her family to be able to get beyond this.

11:42:25   14   The conduct occurred over the course of two years from

11:42:30   15   June of 2017 to August of 2019.  And, again, I credit

11:42:38   16   the fact that your mental health history contributed to

11:42:42   17   this.  But that doesn't excuse the behavior.  Because

11:42:45   18   we're all responsible for our own conduct.  And to

11:42:53   19   engage in this kind of conduct with somebody who you

11:42:57   20   cared about at one point in time, and whose family you

11:43:00   21   cared about at one point in time, I just -- it's very

11:43:05   22   devastating and harmful.  And it takes advantage of

11:43:09   23   people's vulnerability.  And it takes advantage

11:43:12   24   particularly of women, I think, and their

11:43:17   25   vulnerabilities, and their feeling threatened, and they

USA VS. T. LORIA

are feeling exposed and potentially subject to danger.
And I personally think that this five-year mandatory
maximum sentence is far too low for this type of crime.
I don't often say that.  Usually my issues with
prescribed incarceration sentences and congressional
statutes is with mandatory minimums that require a
sentence at a particular level.  I think sometimes those
are not appropriate.  But five years, I don't think,
when you consider the type of harm that cyber stalking
can do, I don't think that is appropriate nor does it
reflect the harm that it can cause to society.  And I
considered the need for the sentence imposed to reflect
the seriousness of the offense, promote respect for the
law, provide just punishment for the offense, afford
adequate deterrence, protect the public from any other
further crimes that you might commit.  The need to
provide you with educational or vocational training,
medical care or other types of treatment in the most
effective manner as well as the kinds of sentences
available.  The need to avoid unwarranted sentencing
disparities among defendants that have been found guilty
of similar conduct.  Based on my consideration of all of
those factors, I do find that a 24-month prison
sentence, with a three year term of supervised release

                            USA VS. T. LORIA

11:44:46   2   to follow, with at least six months of that supervised

11:44:50   3   release term you serving on home detention subject to

11:44:55   4   GPS monitoring, I find that is sufficient but not

11:44:58   5   greater than necessary to comply with the objectives of

11:45:02   6   sentencing set forth in the Sentencing Reform Act.

11:45:04   7           So, therefore, it's the judgment of the

11:45:06   8   Court, that you Theodore Loria, are hereby committed to

11:45:10   9   the custody of the Bureau of Prisons for 24 months.  The

11:45:14  10   cost of the incarceration fee is waived.  I'm going to

11:45:17  11   place you on supervised release for three years.  You

11:45:19  12   must report to the probation office in the federal

11:45:21  13   judicial district where you are authorized to reside

11:45:25  14   within 72 hours of your release from prison unless the

11:45:28  15   probation officer instructs yo to report to a different

11:45:33  16   probation office or within a different time frame.

11:45:35  17   While on supervised release, you shall not commit

11:45:37  18   another federal, state or local crime and shall be

11:45:40  19   prohibited from possessing a firearm, ammunition or

11:45:42  20   other dangerous device.  In addition, you shall not

11:45:46  21   possess a controlled substance, shall comply with the

11:45:48  22   standard conditions that have been adopted by this

11:45:51  23   Court, and shall comply with the following additional

11:45:54  24   conditions.  You shall cooperate in the collection of a

11:45:57  25   DNA sample as required by the Justice for All Act of

USA VS. T. LORIA

2004.  Drug testing is required by the 1994 Crime Control Act.  I'm going to require that you participate in a program for domestic violence pursuant to 18 U.S.C. Section 3583(d).  In addition you shall comply with the conditions of home detention, which will be monitored by a global positioning satellite system for a period of six months.  You shall wear and/or carry an electronic monitoring device and follow monitoring procedures specified by your probation officer as outlined in probation form 61.  You shall pay a portion or total cost of GPS services at the daily rate provided by the U.S. Probation office.  And as we indicated, if after or prior to the expiration of the six months, it is deemed appropriate that that period should be extended, we certainly can do that.  You shall participate in a mental health treatment program, including a mental health evaluation and any treatment recommended.  The probation officer will supervise the details of any testing and treatment, including the selection of a provider and schedule.  If inpatient treatment is recommended, however, it must be approved by the Court unless you consent.  You're not to leave treatment until complete or is ordered by the Court.

                While in treatment or taking psychotropic

USA VS. T. LORIA

11:47:30  2   medication, you shall abstain from the use of alcohol.

11:47:33  3   You're required to contribute to the cost of services

11:47:36  4   rendered.  You shall submit to a search of your person,

11:47:39  5   property, vehicle, place of residence or any other

11:47:41  6   property under your control based upon reasonable

11:47:44  7   suspicion and permit confiscation of any evidence or

11:47:48  8   contraband discovered.

11:47:50  9        You shall not have any contact, directly or

11:47:53  10  indirectly with the victim MC, her family members or her

11:47:58  11  employment.  You shall not use or possess any computer,

11:48:01  12  data storage device or any internet capable device

11:48:05  13  unless you participate in a computer and internet

11:48:08  14  monitoring program or unless authorized by the Court or

11:48:12  15  the U.S. Probation office.  You must provide the U.S.

11:48:15  16  Probation office advance notification of any computer

11:48:18  17  automated services or connected devices that will be

11:48:22  18  used during the term of supervision.  The U.S. Probation

11:48:26  19  office is authorized to install any application as

11:48:28  20  necessary to surveil all activity on computers or

11:48:37  21  connected devices owned or operated by you.  You'll be

11:48:39  22  required to pay the cost of monitoring services.  The

11:48:42  23  U.S. Probation Office shall be notified by electronic

11:48:46  24  transmission of impermissible, suspicious activity or

11:48:49  25  communications occurring on such computers or connected

```
                          USA VS. T. LORIA
```

11:48:53  2  device consistent with the computer monitoring policy in

11:48:57  3  effect by the Probation office.  As triggered by

11:48:58  4  impermissible suspicious activity, you shall consent to

11:49:07  5  and cooperate with unannounced examinations of any

11:49:08  6  computer equipment owned or used by you.  This

11:49:11  7  examination shall include, but is not limited to,

11:49:14  8  retrieval and copying of all data from the computers,

11:49:18  9  connected devices, storage media and any internal or

11:49:22  10  external peripherals.  And may involve removal of such

11:49:27  11  equipment for the purpose of conducting a more thorough

11:49:30  12  inspection.  Any such monitoring or examinations shall

11:49:34  13  be designed to avoid, as much as possible, reading any

11:49:41  14  privileged information or any private material that is

11:49:43  15  not illegal or reasonably likely to lead to illegal

11:49:50  16  material or evidence related to illegal activity.

11:49:51  17          You shall provide the probation office with

11:49:53  18  access to any requested personal and/or business

11:49:56  19  financial information.  The U.S. Probation office is

11:50:00  20  authorized to release presentence and post-sentence

11:50:03  21  financial information submitted by you to the U.S.

11:50:07  22  Attorney's Office for use in the collection of any

11:50:09  23  unpaid restitution.  If while restitution is owed, you

11:50:13  24  shall notify the probation office of any assets

11:50:18  25  received.  And shall not disperse your interest in any

USA VS. T. LORIA

assets, included, but not limited to, income tax
refunds, inheritance, insurance and lawsuit settlements,
or gambling winnings without the approval of the U.S.
Probation office.  While a restitution balance is
outstanding, you shall not incur any debt, including,
but not limited to, use of existing credit cards, new
credit cards, lines of credit, mortgages or private
loans without the approval of the U.S. Probation office.

Pursuant to 18 U.S.C. Section 3663(a) and
consistent with the stipulation, I'm ordering you to
make restitution to the victim MC in the amount of
$8,249.70.  That restitution is due immediately.
Interest is waived.  While incarcerated, if you are
non-UNICOR or UNICOR grade five, you shall pay
installments of $25 per quarter.  If assigned grades one
through four in UNICOR, you shall make payments of 50
percent of your monthly pay.  After considering the
factors set forth at 18 U.S.C. Section 3664(f)(2), while
on supervision, you shall make payments at the rate of
10 percent of your monthly gross income.  In addition,
pursuant to 18 U.S.C. 3664(n), while obligated to
provide restitution, if you receive resources from any
source, including inheritance, settlement, insurance
lawsuit or other judgment during a period of

USA VS. T. LORIA

11:51:54  incarceration, you're required to apply the value of

11:51:57  those resources to any outstanding restitution.  I find

11:52:01  that you do not have the ability to pay a fine and

11:52:03  therefore any fine in this case is waived.  You do have

11:52:06  to pay the mandatory $100 special assessment.  That is

11:52:09  due immediately.  Payments shall be made under the

11:52:12  Bureau of Prisons Financial Responsibility Program and

11:52:14  made to the U.S. District Court in Buffalo, New York.

11:52:19  Now, you waive the right to appeal the

11:52:21  sentence that I just imposed, Mr. Loria, because it's

11:52:24  consistent with the terms of the plea agreement.  But,

11:52:27  if you did want to attempt an appeal, you must file a

11:52:34  notice to appeal in within 14 days of the judgment is

11:52:39  entered in the case.  And if you could not to afford an

11:52:43  appeal, you would have the right to proceed in forma

11:52:43  pauperis.

11:52:48  Ms. Marangola, does the government move to

11:52:51  dismiss the underlying Criminal Complaint?

11:52:53  MS. MARANGOLA:  Yes, the government so

11:52:54  moves.

11:52:54  THE COURT:  Any questions or requests, Mr.

11:52:57  Foti?

11:52:57  MR. FOTI:  I have nothing, Judge.

11:52:59  THE COURT:  Do you have any request in terms

```
 1                        USA VS. T. LORIA
 2   of where Mr. Loria is housed?
 3             MR. FOTI:  I would ask that it be the
 4   lowest, that primarily, the primary concern would be
 5   based on any classification.
 6             THE COURT:  I don't get involved with the
 7   BOP classifications.  If you have a request in terms of
 8   geography, I'll make that.
 9             MR. FOTI:  I, ultimately, I would request
10   that he be located geographically as close to Rochester,
11   New York as possible.  I only mention it because I never
12   want that to supersede a determination regarding level.
13   If there is a medium facility compared to a low
14   facility, obviously, geographic considerations I want to
15   be second.
16             THE COURT:  So, you want me to make the
17   recommendation about geography or no?
18             MR. FOTI:  Yes, I do.
19             THE COURT:  Okay.  So I'll make a
20   recommendation that Mr. Loria be housed in a facility as
21   close to Rochester, New York as possible.
22             Officer Fish, anything that I missed here?
23             PROBATION:  Judge, nothing additional.  I
24   just want to clarify one thing.  With regard to the GPS
25   monitoring, does the Court want me to add that sentence
```

```
 1                  USA VS. T. LORIA

 2   at the end about extending it or we leaving that off and

 3   addressing it in six months?

 4              THE COURT:  We don't have to put it in the

 5   written judgment.  We stated it on the record here and

 6   if once he is under supervision, he still wants to

 7   either have it extended or if probation believes it

 8   should be extended then it can always be brought to my

 9   attention.  But we don't have to include it in the

10   written judgment.

11              PROBATION:  Okay.  Perfect.  Nothing

12   further, Judge.

13              THE COURT:  Good luck to you, Mr. Loria.

14              THE DEFENDANT:  Can I address the housing

15   issue?

16              THE COURT:  Sure, go ahead.

17              THE DEFENDANT:  I would like to be put in

18   the Bureau of Prisons, Butner has a good mental health

19   and so does Allenwood.  These are facilities under the

20   Bureau of Prisons that I researched that deal with

21   people with psychological problems.

22              THE COURT:  So you specifically want me to

23   recommend that you be housed at Butner or Allenwood.

24              THE DEFENDANT:  Yes, ma'am.  Because, like I

25   said, they both in the guides they have special units
```

```
                            USA VS. T. LORIA
11:55:27   2   there to address people's mental health issues.
11:55:31   3              THE COURT:  Mr. Foti?
11:55:32   4              MR. FOTI:  I apologize.  I wasn't aware of
11:55:36   5   that.  He may have mentioned that to me previously.  To
11:55:39   6   the extent that his request, that makes sense to me.  I
11:55:42   7   join in the request.
11:55:43   8              THE COURT:  All right.  Officer Fish, let's
11:55:45   9   make the recommendations the judgment that Mr. Loria be
11:55:49  10   housed either at Butner or Allenwood in order to take
11:55:52  11   advantage of any mental health services.  All right.
11:56:01  12              Anything else, Mr. Loria?
11:56:02  13              THE DEFENDANT:  No.  Thank you, ma'am, very
11:56:04  14   much.
11:56:04  15              THE COURT:  Good luck to you.
11:56:05  16              MR. FOTI:  Thank you, Judge.
11:56:06  17              THE COURT:  Thank you.
          18                     *    *    *
          19              CERTIFICATE OF REPORTER
          20
          21      I certify that the foregoing is a correct transcript
          22   of the record of proceedings in the above-entitled
          23   matter.
          24   S/ Karen J. Clark,  RPR
          25   Official Court Reporter
```

USA VS. T. LORIA